UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISPIN RODRIGUEZ, *individually and doing business as* GROWER'S DIRECT PRODUCE,<br>                  Plaintiff,<br>    v.<br>OLD WEST EXPORT, INC., *a California corporation* and FRANCES MURILLO, *an individual*,<br>                  Defendants. | No. 1:20-CV-00052-JLT-BAM<br><br>ORDER |

      Plaintiff Crispin Rodriguez,[1] individually and doing business as Grower's Direct Produce, brings this action under the Perishable Agricultural Commodities Act (PACA). Defendant Frances Murillo moves for summary judgment on all of plaintiff's claims against her. In the interests of justice and addressing the heavy civil caseloads in the Fresno courthouse, the undersigned resolves this matter. *See* Min. Order, ECF No. 37. For the reasons below, the court **denies** the motion and **grants** partial summary judgment in favor of plaintiff.

---

[1] Some of the documents in the record spell plaintiff's name as "Crespin Rodriguez." *See, e.g.*, Statement of Info., Fick Decl. in Support of Mot. (Fick Decl. I) Ex. E, ECF No. 19-10; Sec'y of Agric. Order, Rodriguez Decl. Ex. 5, ECF No. 28-1. However, for the purpose of this order, the court will refer to plaintiff as "Crispin Rodriguez," as noted in the Complaint. *See generally* Compl., ECF No. 1.

## I. BACKGROUND

### A. Statutory Framework

Congress enacted PACA in 1930 to "prevent[] unfair business practices and promot[e] financial responsibility in the fresh fruit and produce industry." *Farley & Calfee, Inc. v. U.S. Dep't of Agric.*, 941 F.2d 964, 966 (9th Cir. 1991) (citation omitted). PACA prohibits "unfair conduct," including the failure or refusal to make full payments promptly. 7 U.S.C. § 499b(4). Any commission merchant,[2] dealer or broker who violates § 499b is liable to the person so injured "for the full amount of damages . . . sustained in consequence of such violation." *Id.* § 499e(a).

The statute provides two sets of remedies. *See Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 282 (9th Cir. 1997). First, the injured person may enforce liability for damages under § 499e(a) by filing a complaint with the Secretary of Agriculture or bringing a suit in a court of competent jurisdiction. 7 U.S.C. § 499e(b). Second, "the perishable commodities or proceeds from the sale of those commodities are held in trust by the dealer for the benefit of the unpaid seller until full payment is made." *Sunkist Growers, Inc.*, 104 F.3d at 282 (citing 7 U.S.C. § 499e(c)(2)). The unpaid supplier, seller or agent loses the benefits of any such trust "unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within [a specified time]." 7 U.S.C. § 499e(c)(3). If the unpaid person has a PACA license, the licensee also can preserve its status as a beneficiary of the trust by including specific language in the bill or invoice statement. *Id.* § 499e(c)(4). District courts have jurisdiction "to entertain (i) actions by trust beneficiaries to enforce payment from the trust, and (ii) actions by the Secretary to prevent and restrain dissipation of the trust." *Id.* § 499e(c)(5). The damages remedy under § 499e(a) and (b) is separate and distinct from the trust remedy in § 499e(c). *See Sunkist Growers, Inc.*, 104 F.3d at 282; *see also C & G Farms, Inc. v. Capstone Bus. Credit, LLC*, No. 09-0032, 2011 WL 677487, at *11 (E.D. Cal. Feb. 17, 2011)

---

[2] "The term 'commission merchant' means any person engaged in the business of receiving in interstate or foreign commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5).

("PACA damages provisions and the statutory trust are different statutory schemes."). Additionally, under the PACA trust remedy, "individual shareholders, officers, or directors of a corporation who are in a position to control PACA trust assets, and who breach their fiduciary duty to preserve those assets, may be held personally liable under the Act." *Sunkist Growers, Inc.*, 104 F.3d at 283.

### B. Factual and Procedural Background

In this action, plaintiff seeks to recoup unpaid amounts owing from defendant Old West Export, Inc. *See generally* Compl. The following facts are supported by the record and undisputed unless otherwise noted. *See* Joint Statement of Undisputed Facts (JSUF), ECF No. 19-5; Pl.'s Resp. to Def.'s Statement of Undisputed Facts (Pl.'s Resp.), ECF No. 28-2. Although plaintiff did not file a Fictitious Business Name Statement until 2021, he started doing business as Grower's Direct Produce in 2013. *See* Fictitious Bus. Name Statement, Rodriguez Decl. Ex. 1, ECF No. 28-1. On March 30, 2015, Grower's Direct Produce, Inc., plaintiff's corporation, filed Articles of Incorporation of a General Stock Corporation with the Secretary of State for California. Articles of Incorp., Fick Decl. I Ex. D, ECF No. 19-9 (Articles of Incorporation of a General Stock Corporation filed with the Secretary of State of California); *see also* Statement of Info. (filed 2017); JSUF ¶ 1. Plaintiff is the president, director, chief executive officer, secretary and chief financial officer of the corporation. Statement of Info. There are no other officers or directors. *See id.* While plaintiff declares he was transitioning his sole proprietorship business to a corporation during the relevant times, Rodriguez Decl. ¶ 3, ECF No. 28-1, he stipulates Grower's Direct Produce, Inc. was incorporated in 2015, Pl.'s Resp. ¶ 1, and the record confirms as much, *see* Articles of Incorp.; Statement of Info. To address the possibility of confusion arising from plaintiff's use of the two similar business names, the court will refer to Grower's Direct Produce, Inc., as the Corporation. Defendant Murillo is an officer and co-owner of defendant Old West Export, Inc. *See* Rodriguez Decl. ¶¶ 9–11; Old West Statement of Info., Rodriguez Decl. Ex. 7.

At all relevant times, plaintiff held a PACA license and sold fruit under that license. Rodriguez Decl. ¶ 3; *see* JSUF ¶ 6. The Corporation did not hold a PACA license until 2019.

*See* Rodriguez Decl. ¶¶ 4, 6; PACA License, Fick Decl. I Ex. C, ECF No. 19-8 (showing Grower's Direct Produce, Inc. was issued a PACA license on March 21, 2019); JSUF ¶ 4. Plaintiff declares he sold fruit to Old West Export, Inc. as an individual doing business as Growers Direct Produce during all the relevant times. Rodriguez Decl. ¶¶ 3–4. His transactions with Old West Export, Inc. either were in person or via his personal phone or email. *Id.* ¶ 4. All of the invoices were sent from his home. *Id.* Between June and August 2018, the record shows the Corporation invoiced Old West Export, Inc., for perishable agricultural commodities. *See* Invoices, Fick Decl. I Ex. B, ECF No. 19-7; JSUF ¶ 7; Pl.'s Resp. ¶ 7 (stipulating corporate name "Grower's Direct Produce, Inc." appears on the invoices). Old West Export, Inc. did not pay for the produce, and owed plaintiff $187,393.50. Rodriguez Decl. ¶ 8; Balance, Fick Decl. in Support of Reply (Fick Decl. II) Ex. 1, ECF No. 30-2. Although the Corporation is identified on each invoice, plaintiff himself is not, *see* Invoices. Each invoice "contains a notice of intent to preserve statutory PACA trust right" in compliance with 7 U.S.C. § 499e(c)(4). JSUF ¶ 14; *see* Invoices. Apart from the notice of intent on the invoices, neither plaintiff individually nor Grower's Direct Produce, Inc. provided a separate written notice of intent to preserve his or their statutory PACA trust rights. JSUF ¶ 15; *see* Rodriguez Decl. ¶ 7; Consolidated Initial Disclosures, Fick Decl. I Ex. A, ECF No. 19-6.

In 2019, plaintiff, individually and doing business as Grower's Direct Produce, filed a complaint against Old West Export, Inc. with the U.S. Secretary of Agriculture and obtained a default judgment in his favor. *See* Sec'y of Agric. Order; JSUF ¶¶ 16–20. Specifically, the Secretary of Agriculture found Old West Export, Inc., violated § 499b and found plaintiff was entitled to damages under § 499e(a). Sec'y of Agric. Order. The Secretary ordered Old West Export, Inc., to pay plaintiff $187,393.50 in reparations with interest. *Id.* Plaintiff brought this action to enforce that order and to enforce payment from the trust imposed on the subject commodities and sales proceeds. *See generally* Compl. Plaintiff brings several claims against defendants Old West Export, Inc. and Murillo under PACA and seeks damages and declaratory relief. *Id.* Old West Export, Inc. has not appeared, and plaintiff has not instituted any default proceedings against it. The court will order plaintiff to seek entry of default or move for default

4

judgment against it promptly now. After plaintiff filed this complaint, he filed a Fictitious Business Name Statement formally declaring he is doing business as Grower's Direct Produce and registered his fictitious business name in accordance with California law. *See* Fictitious Bus. Name Statement.

Murillo moves for summary judgment on all of plaintiff's claims against her. Mot., ECF No. 19; Mem., ECF No. 19-2. Plaintiff has brought the following claims against Murillo specifically: failure to maintain PACA trust assets (claim III), breach of fiduciary duties to PACA trust beneficiaries (claim V), and fraudulent concealment of insufficient PACA Trust Assets (claim VI). Compl. ¶¶ 40–42, 50–59. Murillo argues plaintiff does not have standing and in any event has not preserved his position as a beneficiary of the PACA trust so as to prevail. Mem. at 4–5.[3] Plaintiff opposes, Opp'n, ECF No. 28, and Murillo has replied, Reply, ECF No. 30. The court held a hearing on December 8, 2023. *See* Mins. Hr'g, ECF No. 41. Devon O'Shea appeared for Murillo; there was no appearance on behalf of plaintiff.[4] *Id.*

## II.    LEGAL STANDARD

A court may grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The district court may grant summary judgment on 'each claim or defense—or the part of each claim or defense—on which summary judgment is sought.'" *Nation v. City of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-moving party must then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* at 587–88.

---

[3] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system.

[4] After hearing the court learned counsel for plaintiff mistakenly appeared at the Fresno courthouse. *See* ECF No. 42.

These rules apply to a defendant's argument that the court lacks jurisdiction to hear the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If a defendant challenges the court's jurisdiction in a motion for summary judgment, the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Id.* (citations omitted). Federal courts also have an independent obligation to ensure they have subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Standing is a necessary component of the court's subject matter jurisdiction; if a plaintiff lacks standing, the court lacks jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). To demonstrate standing, a plaintiff must (1) have suffered a concrete and particularized injury-in-fact, which is actual or imminent, not conjectural or hypothetical; (2) demonstrate a causal connection between the injury and the defendant's conduct; and (3) show it is likely the injury will be redressed by a favorable decision. *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796–97 (9th Cir. 2001).

### III. DISCUSSION

#### A. Standing

Murillo argues in the first instance that plaintiff lacks standing to bring this action because it is the Corporation, Grower's Direct Produce, Inc., and not plaintiff, individually, that has the right to bring any potential claims against her. Mem. at 4–5. She argues plaintiff cannot bring a claim contending he was doing business as a corporation and cannot disregard the corporate form just because it has become inconvenient. *See id.* at 4; Reply at 2. During hearing, Murillo had an opportunity to address again whether the alter ego doctrine applied in this case. When pressed by the court, Murillo offered the same arguments raised in her briefs.

As the party invoking this court's jurisdiction, plaintiff has the burden of demonstrating standing. Plaintiff does not respond directly to defendant's standing arguments. *See generally* Opp'n. Instead, plaintiff argues he can maintain this action because he was doing business as Grower's Direct Produce at the relevant times and all of his dealings with Old West, Export, Inc. were in person; for example, he used his personal contact information and utilized his home

6

1   address. Opp'n at 6–8. Additionally, he has now registered his fictitious business name in
2   accordance with California law. *See id.* at 7–8; Fictitious Bus. Name Statement; *see* Cal. Bus. &
3   Prof. Code § 17918 (barring actions brought under fictitious business name until fictitious
4   business name statement filed in accordance with statute). Plaintiff's registration of his fictitious
5   business name does allow him to bring this suit on behalf of "Grower's Direct Produce." *See*
6   *Hydrotech Sys., Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 1001 n.8 (1991) ("Noncompliance
7   merely prevents a fictitiously named business from *enforcing* obligations owed to it *until* it places
8   on record its true nature and ownership." (emphases in original)). But he cannot lawfully adopt
9   as a fictitious business name a moniker that includes "Inc.," as the Corporation's name does, *see*
10  Cal. Bus. & Prof. Code § 17910.5(a) ("No person shall adopt any fictitious business name which
11  includes . . . 'Inc.' unless that person is a corporation[.]"); *see also Weihnacht v. WestEd*, No. 14-
12  01564, 2014 WL 3840972, at *4 (N.D. Cal. Aug. 1, 2014) ("Plaintiff is prohibited from using
13  'Inc.' in the name of any fictitious business entity."). For that reason, as a general matter,
14  plaintiff cannot maintain this action on behalf of the Corporation unless the court disregards his
15  and the corporation's separate legal personhoods. *See Jones v. L.A. Cent. Plaza LLC*, 74 F.4th
16  1053, 1056 (9th Cir. 2023) (district court has discretion to consider whether to sua sponte grant
17  summary judgment against movant on the issue of standing when the movant has had full and fair
18  opportunity to make its case).

19          "A corporation is a distinct legal entity separate from its officers, unless exceptional
20  circumstances demonstrate that the corporation may be disregarded and considered merely the
21  alter ego of the persons composing it." *Leppaluoto v. Nazarian*, 895 F.2d 1417 (unpublished
22  table decision) (9th Cir. 1990). Thus, in general, "[w]here there is an injury to the corporation,
23  the cause of action should be brought by the corporation, or by the shareholders derivatively if the
24  corporation fails to act; only for separate individual damage does an individual cause of action
25  lie." *Sherman v. Brit. Leyland Motors, Ltd.*, 601 F.2d 429, 440 n.13 (9th Cir. 1979).

26          However, a court may disregard the corporate form in exceptional circumstances. Here,
27  defendant contends California law governs, *see* Mem. at 4, and plaintiff does not contend
28  otherwise, *see generally* Opp'n. "The determination of whether to apply state or federal alter ego

1   doctrine depends on the degree to which the subject matter of the case implicates federal
2   interests." *Wolfe v. United States*, 798 F.2d 1241, 1244 n.3 (9th Cir.), *opinion amended on denial*
3   *of reh'g*, 806 F.2d 1410 (9th Cir. 1986).  The Ninth Circuit has not weighed in on whether courts
4   should apply the state or federal alter ego doctrine in the context of PACA actions.  *Cf. Towe*
5   *Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993) ("We apply the law of the
6   forum state in determining whether a corporation is an alter ego of the taxpayer.").  Here, because
7   the underlying action arises under federal law, the court applies the federal alter ego doctrine, but
8   looks to California law for guidance.  *See Laborers Clean-Up Cont. Admin. Tr. Fund v. Uriarte*
9   *Clean-Up Serv., Inc.*, 736 F.2d 516, 523 (9th Cir. 1984) (applying federal substantive law but
10  looking to "state law for guidance"); *Ministry of Def. of the Islamic Republic of Iran v. Gould,*
11  *Inc.*, 969 F.2d 764, 769 n.3 (9th Cir. 1992) (noting California law is "substantially similar" to
12  federal law).
13         The alter ego doctrine is an equitable remedy whereby a court may disregard the formal
14  separateness of a corporate entity when doing so prevents fraud or injustice.  *See, e.g., Seymour v.*
15  *Hull & Moreland Eng'g*, 605 F.2d 1105, 1111 (9th Cir. 1979); *see also Cooperman v.*
16  *Unemployment Ins. Appeals Bd.*, 49 Cal. App. 3d 1, 7 (1975) ("[T]he corporate entity will be
17  disregarded to prevent fraud, to protect third persons or to prevent a grave injustice.").  Under the
18  alter ego doctrine, "courts view the formal separateness between the two corporations as merely a
19  legal fiction." *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 775 (9th Cir. 1992).
20         The Ninth Circuit has "developed certain guidelines dealing with disregard of the
21  corporate entity." *Seymour*, 605 F.2d at 1111.  In *Seymour*, the Circuit articulated "two primary
22  elements" of the alter ego doctrine.  *Id.*  "First, the court must find that there is such a unity of
23  interest and ownership between the corporation and the shareholder that the two no longer exist as
24  separate entities." *Id.* (citations omitted).  And, "[s]econd, it must be shown that 'failure to
25  disregard the corporation would result in fraud *or* injustice.'" *Id.* (citation omitted; italics added).
26  In articulating the two-part test, the court distilled "the jumble of federal decisions," and found "a
27  sort of generalized federal substantive law on disregard of corporate entity" concentrated on
28  "three general factors: the amount of respect given to the separate identity of the corporation by

its shareholders, the degree of injustice visited on the litigants by recognition of the corporate entity, and the fraudulent intent of the incorporator." *Id.* The "three general factors," as described, did not themselves form a conjunctive test. Rather in *Seymour*, the court applied the two-part test it articulated and found the "trustees fail[ed] on the second prong of the analysis"—requiring either fraud or injustice—because there was no evidence of fraud and "no substantial injustice [would] result if [the court] respect[ed] the corporation." *Id.* at 1112–13.

Like *Seymour*, many other Ninth Circuit decisions for many years have recognized a disjunctive test, wherein the second prong requires a showing of either fraud or injustice. *See, e.g.*, *United States v. Standard Beauty Supply Stores, Inc.*, 561 F.2d 774, 777 (9th Cir. 1977) (alter ego requires two findings, one, a unity of interest and ownership such that "the separate personalities of the corporation and the individual no longer exist," and two, "the failure to disregard the corporation would result in fraud or injustice" (citations omitted)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (second element of two-part test met by showing failure to disregard corporate form would result in fraud or injustice); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134 (9th Cir. 2003) (same); *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996) (same).

The Circuit's two-part test effectively mirrors the California test, as that state's courts' decisions recognize. *See, e.g.*, *Standard Beauty Supply Stores*, 561 F.2d at 777 (citing to California state court decisions); *see also, e.g.*, *Communist Party v. 522 Valencia, Inc.*, 35 Cal. App. 4th 980, 993 (1995) (two general requirements for applying alter ego doctrine in California are "(1) there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) failure to disregard the corporate entity would sanction a fraud or promote injustice.").

In a recent Circuit opinion, however, a Ninth Circuit panel used language suggesting the Circuit requires a "conjunctive test," requiring a party must show both fraud and injustice in addition to satisfying the first prong of the alter ego test. *See Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 899 (9th Cir. 2021); *see also Woo v. United Express*

9

*Grp., Inc.*, No. 22-01253, 2023 WL 6387225, at *3 & n.2 (E.D. Cal. Sept. 29, 2023) (citing *Pacific Gulf Shipping* and noting lack of clarity whether Ninth Circuit requires showing of fraud in light of conflicting Circuit authorities without resolving whether second prong test is disjunctive or conjunctive). In doing so, that panel cited to *Seymour* as important precedent, without saying it was altering or reversing that decision. *See Pac. Gulf Shipping Co.*, 992 F.3d at 899. A close reading of *Pacific Gulf Shipping* clarifies it was not actually holding that a different test applies. In describing the applicable alter ego test as conjunctive, *Pacific Gulf Shipping*'s primary point is to distinguish Ninth Circuit authority from that in the Second Circuit, which focuses on only two elements for alter ego and employs "a disjunctive rule allowing a plaintiff to pierce the corporate veil with only a showing of *either* domination and control *or* fraud." *Id.* (emphases in original).

While the court in *Pacific Gulf Shipping* cites *Seymour* and describes it parenthetically as having "first articulat[ed] the three requirements to pierce the corporate veil," its suggestion in the same parenthetical that the court in *Seymour* actually applied the three factors conjunctively appears to be a mischaracterization. *Id*. The court in *Pacific Gulf Shipping* also cited the case of *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1489–90 (9th Cir. 1983), as authority for a conjunctive test. *Id*. *American Queen* does review factors it identifies as conjunctive, without actually applying them, 708 F.2d at 1489, and cites to *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 764 (9th Cir. 1981), *id*. at 1490. *Audit Services* in turn cites to *Seymour* for the precedential legal standard, first reviewing the three factors *Seymour* says "are of primary importance in this inquiry": 1) respect given to the separate identity, 2) fraud, and 3) injustice, 641 F.2d at 764, and then apparently acknowledging the disjunctive nature of the elements of the second prong, *id.* (noting "absence of evidence of fraud or injustice"). Fundamentally, although *Pacific Gulf Shipping* says in passing the applicable test as to the second alter ego prong is conjunctive, it did not overrule *Seymour*, or any other prior Ninth Circuit case holding the test for the second prong is disjunctive. Thus, Circuit authority properly respected supports application of a disjunctive test, wherein a showing of either fraud or injustice is sufficient, if the first prong of the piercing the veil test—respect for corporate entity—is met. *Cf. Duarte v. City of Stockton*,

10

60 F.4th 566, 574 (9th Cir.), *cert. denied*, 143 S. Ct. 2665 (2023) (articulating general rule that a Ninth Circuit panel cannot overrule the decision of a prior panel; "when a subsequent panel makes a 'suggestion' that 'is inconsistent with earlier opinions of this court,' such suggestions are to be disregarded in favor of the earlier, binding holding" (citations omitted)); *Lair v. Bullock*, 798 F.3d 736, 745 (9th Cir. 2015) ("[T]hree-judge panels are normally bound by the decisions of prior three-judge panels."). This court thus will employ the disjunctive rule of *Seymour*.

Turning to the analysis required here, then, persons who control a corporation or a corporation itself may not use the alter ego doctrine to disregard the corporate form. *See, e.g.*, *Saratoga Sav. & Loan Ass'n v. Cirona*, 931 F.2d 897 (9th Cir. 1991) (unpublished) ("That the corporate veil may be pierced for the purpose of imposing liability on shareholders does not mean it can equally be pierced for the benefit of the shareholders."); *Brooklyn Navy Yard Cogeneration Partners, L.P. v. Super. Ct.* (*Parsons Corp.*), 60 Cal. App. 4th 248, 258 (1997) (noting supporting authority "for the proposition a corporation may not assert the alter ego doctrine to deny its own legal existence"). However, in exceptional circumstances, "some cases have allowed corporations to disavow the corporate form where doing so prevents injustice." *Brooklyn Navy Yard Cogeneration Partners, L.P.*, 60 Cal. App. 4th at 259 (collecting cases); *Cirona*, 931 F.2d at 897 n.2 (suggesting there may be a "rare case" in which there is "a complete identity of interest between shareholder and corporation"); *Sherman*, 601 F.2d at 439 (suggesting a president and sole stockholder of a corporation may have had standing to sue on behalf of the corporation if there had been a showing the corporation "did not maintain its corporate existence separate and apart from" plaintiff); *In re Napster, Inc. Copyright Litig.*, 354 F. Supp. 2d 1113, 1120 (N.D. Cal. 2005) (noting some courts have recognized exception to the general rule against shareholder standing and recognizing situations "where a shareholder 'may so dominate the corporation as to be its alter-ego[] are rare and will not subvert the general rules against shareholder standing.'" (quoting *John Peterson Motors, Inc. v. General Motors Corp.*, 613 F. Supp. 887, 902 n.18 (D. Minn. 1985))).

Here, the court finds exceptional circumstances exist to disregard the corporate form for the purposes of resolving the pending matter. The court recognizes it is undisputed the

11

Corporation was incorporated before plaintiff sold his produce to Old West Export, Inc.  Plaintiff stipulates to this fact, Pl.'s Resp. ¶ 1, and "[a] party is normally bound by its stipulation of facts," *Block v. City of Los Angeles*, 253 F.3d 410, 419 n.2 (9th Cir. 2001).  Additionally, the Articles of Incorporation and Statement of Information filed with the Secretary of State show the Corporation is a California corporation.  Articles of Incorp.; Statement of Info.  It also is undisputed the Corporation's name appears on each of the invoices issued to Old West Export, Inc.  *See* Invoices; Pl.'s Resp. ¶ 7 (stipulating "Grower's Direct Produce, Inc." appears on all the invoices).  Nonetheless, the court finds plaintiff is the alter ego of the Corporation, as explained below.

The California Court of Appeal's reasoning in *Cooperman* is persuasive.  *Cooperman v. Unemployment Ins. Appeals Bd.*, 49 Cal. App. 3d 1 (1975).  The plaintiff was a cameraman-director who formed a corporation.  *Id.* at 5.  He was president and sole shareholder of his corporation.  *Id.*  The services the corporation provided all related to the plaintiff's talent as a cameraman-director and the corporation did no business "other than the supplying of the personal services of" plaintiff.  *Id.*  The plaintiff later sought unemployment benefits, which the defendant paid.  *Id.* at 4.  However, the defendant later concluded the plaintiff was not entitled to those benefits because he was president of a corporation, and therefore not unemployed.  *Id.*  The defendant argued the plaintiff and his corporation were not the same for purposes of determining the plaintiff's eligibility for benefits.  *Id.* at 6.  The Court of Appeals rejected the defendant's argument and found the plaintiff was not separable from his corporation; they were "one and the same." *Id.* at 8.  The court noted if the defendant were "allowed to prevail, [it] will merely be exalting form over substance to deprive [the plaintiff] of unemployment insurance benefits." *Id.*  The court further found "[i]f the separability doctrine is applied, a grave injustice will be perpetrated . . . for the mere reason that [the plaintiff] does business as a corporation rather than as a sole proprietor." *Id.*

Similarly, here, plaintiff and the Corporation are one and the same.  To find otherwise would effect a grave injustice.  Plaintiff is the sole owner and president, director, chief executive officer, secretary and chief financial officer of the Corporation.  *See* Statement of Info.;

12

Rodriguez Decl. ¶ 3. Everything the Corporation sold to Old West Exports, Inc. was sold using plaintiff's individual PACA license. Rodriguez Decl. ¶¶ 3–4. The Corporation's sole purpose was to distribute plaintiff's produce. *See id.* ¶¶ 2–3. Plaintiff personally transacted with Old West Exports, Inc. and used his personal phone number and email. *Id.* ¶ 4. He sent all invoices to Old West Exports, Inc. from his home. *Id.* The fruit he sold was not simply on behalf of the Corporation; he sold all his fruit on behalf of himself too. *See id.* Plaintiff also declares his business was a proprietorship that was transitioning to a corporation. *See id.* ¶ 3. His declaration provides further evidence of the indistinguishability of the two business forms in this case, sole proprietorship and corporation. For purposes of this action, the court finds plaintiff is the alter ego of the Corporation and the injuries he suffered were injuries he himself suffered directly. *See Farley & Calfee, Inc.*, 941 F.2d at 966 (purpose of PACA is to prevent unfair business practices). Defendant Old West Export, Inc. did not pay plaintiff for the fruit it received and owed plaintiff $187,393.50. *See* Balance; Sec'y of Agric. Order. As noted above, as an officer and co-owner of Old West Export, Inc., Murillo may be held personally liable under PACA. *See Sunkist Growers, Inc.*, 104 F.3d at 283. To prevent plaintiff from collecting the unpaid accounts because he was using a corporate name on his invoices rather than that of a sole proprietor "would be palpably [u]njust and a denial of equal even-handed treatment." *Cooperman*, 49 Cal. App. 3d at 8. The court finds this is one of those rare cases where there is "complete identity of interest between shareholder and corporation[.]" *See Cirona*, 931 F.2d at 897 n.2.

Plaintiff has shown he has standing to bring an action against Murillo.

**B.      Plaintiff Did Preserve His PACA Trust Rights**

On the substance of the pending motion, the court finds Murillo is not entitled to judgment as a matter of law regarding whether plaintiff preserved his PACA trust rights.

Plaintiff must establish three requirements to become a perfected PACA Trust beneficiary: "First, the goods in question must be perishable agricultural commodities. Second, the commodities must have been received by a commission merchant, a dealer, or broker. Third, the claimant must have provided written notice of its intent to preserve its rights under PACA within thirty days after payment became due." *In re Country Harvest Buffet Rests., Inc*, 245 B.R. 650,

13

653 (B.A.P. 9th Cir. 2000). Plaintiff could have preserved his rights in two ways: 1) under § 499e(c)(3), he could have "given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days" or 2) under § 499e(c)(4), as a licensee, he could have included specific language on his invoices. "Unless the terms of the statute are met, [the statute] specifies that the benefits of the trust are lost." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 940 (9th Cir. 1992). The Ninth Circuit has held "[l]iteral compliance is required." *In re San Joaquin Food Serv., Inc.*, 958 F.2d 938, 940 (9th Cir. 1992); *see In re Enoch Packing Co., Inc.*, 386 F. App'x 611, 613 (9th Cir. 2010) (unpublished) ("We have consistently required strict compliance with the PACA trust provisions.").

As a preliminary matter, the court rejects plaintiff's contention that the PACA award the Secretary of Agriculture issued in his favor is "conclusive" and "is entitled to full faith and credit." Opp'n at 3–5. He appears to assume the Secretary of Agriculture conclusively established he preserved his PACA trust rights. *See id.* However, the Secretary of Agriculture's order does not discuss whether he preserved his PACA trust rights, *see* Sec'y of Agric. Order. In that order, the Secretary of Agriculture found Old West Export, Inc., violated § 499b and awarded damages in accordance with § 499e(a). *See id.* The damages remedy under § 499e(a) is separate and distinct from the trust remedy in § 499e(c). *See Sunkist Growers, Inc.*, 104 F.3d at 282 (discussing two different types of remedies); *see also C & G Farms, Inc.*, 2011 WL 677487, at *11 ("PACA damages provisions and the statutory trust are different statutory schemes."). The mere fact the Secretary of Agriculture ruled in plaintiff's favor does not conclusively establish he had maintained his PACA trust rights.[5]

Nevertheless, the court finds plaintiff has preserved his PACA trust rights. Under PACA, "[a]n unpaid supplier, seller, or agent involved in those early-stage transactions must give notice of their intent to preserve the benefits *on their own behalf*." *See In re Bissett Produce, Inc.*, 512 B.R. 528, 538 (Bankr. E.D.N.C. 2014) (emphasis in original) (citing 7 U.S.C. § 499e(c)(3)).

---

[5] Plaintiff may seek enforcement of liability and damages under § 499g(b). 7 U.S.C. § 499g(b) (complainant may bring suit for damages in federal court "[i]f any commission merchant, dealer, or broker does not pay the reparation award within the time specified in the Secretary's order").

14

1  It is undisputed plaintiff and the Corporation did not provide separate written notices of their
2  intent to preserve their PACA trust right in accordance with 7 U.S.C. §499e(c)(3), JSUF ¶ 15;
3  *see* Rodriguez Decl. ¶ 7; Consolidated Initial Disclosures.  However, plaintiff, who is the alter
4  ego of the Corporation, had a valid PACA license, Rodriguez Decl. ¶ 3, and each invoice
5  contained a notice of intent to preserve plaintiff's PACA trust rights in compliance with 7 U.S.C.
6  § 499e(c)(4); *see* Invoices.  Even after drawing all inferences in favor of Murillo, there is no
7  genuine dispute of material fact regarding whether plaintiff preserved a PACA trust—plaintiff
8  strictly complied with § 499e(c)(4) and preserved his PACA trust rights by including
9  § 499e(c)(4)'s language in the invoices he issued.

10  The court therefore **grants** partial summary judgment in plaintiff's favor on the issue of
11  whether plaintiff preserved his PACA trust rights.  *See* Fed. R. Civ. P. 56(a) (district court may
12  grant summary judgment on part of claim); *id.* 56(f)(1).  "[A] court may grant summary judgment
13  without notice if the losing party has had a 'full and fair opportunity to ventilate the issues
14  involved in the motion.'"  *In re Rothery*, 143 F.3d 546, 549 (9th Cir. 1998) (citations omitted);
15  *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 654–55 (9th Cir. 2016) (noting
16  circumstances when court may grant summary judgment sua sponte to nonmoving party).  Here,
17  Murillo had a full and fair opportunity to address the issue of whether plaintiff preserved his
18  PACA trust rights; Murrillo's motion rests on whether plaintiff preserved a PACA trust.  *See*
19  Mem. at 5–10.  Murillo conceded as much at hearing.  Because Murrillo's motion, to prevail,
20  depends on the court's finding plaintiff did not preserve his PACA trust rights, *see generally*
21  Mot., Murillo's motion for summary judgment is **denied.**

22  **IV.   SETTLEMENT**

23  During hearing, Murillo represented the parties have not yet engaged in any settlement
24  discussions.  Plaintiff and Murillo are directed to promptly meet and confer to discuss potential
25  settlement of this action.  Settlement discussions require focus and preparation and should involve
26  the attorneys who will try the case and the person or persons having full authority to negotiate and
27  settle the case on any terms.  Plaintiff should initiate settlement discussions by providing a written
28  itemization of damages and a meaningful settlement demand that includes an explanation of why

the demand is appropriate.  Defendant should respond with an acceptance of the offer or with a meaningful counteroffer, and which includes an explanation of why the counteroffer is reasonable.  The parties should continue in this way until they reach settlement or have exhausted informal settlement efforts.

If the parties have not been able to informally reach a settlement within 45 days, the parties shall initiate participation in the court's Voluntary Dispute Resolution Program ("VDRP") by contacting the court's VDRP administrator, Sujean Park, at (916) 930-4278 or SPark@caed.uscourts.gov, and file a notice on the court's docket stating they have contacted the VDRP administrator.[6]  The parties shall carefully review and comply with Local Rule 271, which outlines the specifications and requirements of the VDRP.  No later than fourteen (14) days after completion of the VDRP session, the parties shall jointly file their VDRP Completion Report, consistent with Local Rule 271(o).

## V.  CONCLUSION

For the reasons above, defendant Frances Murillo's motion for summary judgment is **denied.**  To the extent Murillo also appears to seek summary judgment on claims only against Old West Export, Inc., *see* Mem. at 6–7, the motion is **denied**.  The court finds as a matter of law plaintiff did preserve a PACA trust and **grants** partial summary judgment in plaintiff's favor on this issue, leaving for trial a determination of whether Murillo is personally liable under PACA.

Plaintiff shall seek entry of default from the Clerk of Court against Old West Export, Inc. within 21 days, and then move for default judgment before the assigned magistrate judge within 30 days after default is entered.  Any delays in seeking entry of default or default judgment against Old West Export, Inc. may result in dismissal for failure to prosecute.

Plaintiff and Murillo shall engage in informal settlement discussions as directed above and if no settlement is reached within 45 days they shall request assistance from the court's Voluntary

---

[6] The resources of the VDRP program are limited, and the parties are expected to make good faith efforts to timely and fully exhaust informal settlement efforts prior to initiating participation in the VDRP.  The court will look with disfavor upon parties stalling or failing to participate in the above-mentioned initial informal discussions, prompting potentially unnecessary participation in the VDRP and straining the program's resources.

1  Dispute Resolution Program in identifying a seasoned neutral to convene a formal court-
2  convened settlement session.
3        This order resolves ECF No. 19.  The case is referred back to Judge Jennifer L. Thurston
4  for all further proceedings.  Min. Order, ECF No. 37.
5        IT IS SO ORDERED.
6  DATED:  January 9, 2024.

                                                      CHIEF UNITED STATES DISTRICT JUDGE